IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

MIDDLE DIVISION.

NASHVILLE, DECEMBER TERM, 1921.

MEMPHIS UNION STATION CO. *v.* JESSE MANNING.

(*Nashville.* December Term, 1921.)

RAILROADS. Not liable for negligence during federal control.

A railroad is not liable for negligence of employees while the road was under federal 'control, provided for by Federal Control Act March 21, 1918 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, Sections 3115¾a-3115¾p), in view of General Order No. 50 of the Director General of Railroads.

Cases cited and approved: Mo. Pac. R. R. Co. and Walker D. Hines, Director General of Railroads v. H. A. F. Ault, 255 U. S., 1; Gracie v. Palmer, 8 Wheat., 605; McNulta v. Lochridge, 141 U. S., 327;

FROM SHELBY.

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. H. W. LAUGHLIN, Judge.

H. S. BUCHANAN and W. G. CAVETT, for plaintiff.

(640)

J. W. CANADA, for defendant.

MR. JUSTICE HALL delivered the opinion of the Court.

The parties to this suit will be referred to according to their *status* in the trial court; that is, as plaintiff and defendant.

The plaintiff, Jesse Manning, sued the defendant, Memphis Union Station Company, in the circuit court of Shelby county for damages growing out of certain alleged personal injuries sustained by him on account of the negligence of the defendant's agents, servants, and employees in throwing some cross-ties into plaintiff's yard and across his way of ingress and egress to and from his residence, which is situated on Broadway street in the city of Memphis, Tenn., and over which plaintiff fell while returning at night to his hime from his work.

To the plaintiff's declaration the defendant filed three pleas: (1) The general issue; (2) contributory negligence; and (3) a special plea to the effect that it was not, at the time of the alleged wrongs and injuries complained of by plaintiff, operating the railroad properties which it owned, but that its said properties had, prior to the date upon which plaintiff sustained his injuries, been taken over by the United States government, and were being operated by it through W. G. McAdoo, Director General, and was being so operated by said McAdoo, as such Director General, at the time plaintiff's suit was instituted.

To this third and last plea the plaintiff demurred, which demurrer was overruled by the court. The plaintiff then joined issue upon said plea, after which the case went to trial before the court and a jury.

144 Tenn.—41

At the close of the evidence both parties moved the court for a directed verdict. The defendant's motion was predicated on the ground that the undisputed evidence showed that it had nothing whatever to do with the operation of its properties at the time the plaintiff sustained his injuries, but that the same were being operated by the United States government through its railroad administration, and that defendant was in no wise responsible for plaintiff's injuries.

In the view we take of the case it is unnecessary to state the grounds upon which plaintiff predicated his motion for a directed verdict. It suffices to say that his motion was overruled. The defendant's motion was sustained, and plaintiff's suit was dismissed.

Whereupon, plaintiff excepted and appealed to the court of civil appeals. That court reversed the judgment of the trial court, and remanded the case for a new trial upon the ground that section 10 of the Federal Control Act, passed by Congress on March 21, 1918 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, section 3115¾j) permitted injured persons to sue railroad corporations for injuries inflicted by and through the negligence of the employees and servants of the United States Railroad Administration engaged in the operation of such railroad corporations.

The case is now before this court upon defendant's petition for writ of *certiorari,* and for review.

The only question presented for determination is whether or not the defendant, in its corporate capacity, can be held liable for the negligent acts of the employees and servants of the United States Railroad Administra-

tion; the undisputed evidence showing that, at the time plaintiff sustained his injuries, defendant's properties were under the control and management of W. G. McAdoo, Director General of Railroads, by virtue of the Federal Control Act of March 21, 1918 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, sections 3115¾a-3115¾p), and that defendant had nothing whatever to do with the operation of its properties, or the agents and servants employed in operating the same.

Prior to the decision of the supreme court of the United States rendered June 1, 1921, in the case of *Missouri Pacific Railroad Company and Walker D. Hines, Director General of Railroads*, v. *H. A. F. Ault*, 255 U. S.,—, 41 Sup. Ct., 593, 65 L. Ed.,—, being case No. 252 of the October term, 1920, which opinion is published in the Advance Sheets of the reported decisions of that court, there had been a wide divergence of judicial opinion in the several States and the inferior federal courts on the question presented. The adjudicated cases, up to a comparatively recent date, are collated in the case notes found in 8 A. L. R., at page 969, et seq. and 4 A. L. R., 680, et seq.

This question was also squarely presented and decided by the court of civil appeals of this State in the case of *Everette O. Majors* v. *W. G. McAdoo, Director General of Railroads et al.*, at Knoxville, on July 12, 1919, which decision of the court of civil appeals was affirmed by this court on June 19, 1920. The result of the holding in that case was that the plaintiff could properly make the railroad company a party to the suit under the provisions of section 10 of the Federal Control Act of March 21,

1918. The decision in that case was in accord with the holding of a majority of the courts where the question had arisen.

The supreme court of the United States, however, in the case of *Missouri Pacific Railroad Co. and Walker D. Hines, Director General of Railroads,* v. *Ault, supra,* held that, in view of General Order No. 50 of the director general of railroads, which order required that the suit be against the director general by name, suit could not be maintained against the corporation. General Order No. 50 reads as follows:

"It is therefore ordered, that actions of law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the director general of railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control, or operation of any railroad or system of transportation by the director general of railroads, which action, suit, or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise; provided, however, that this order shall not apply to actions, suits or proceedings for the recovery of fines, penalties and forfeitures. . . .

"The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other

carrier, may on application be amended by substituting the director general of railroads for the carrier company as party defendant and dismissing the company therefrom.''

. Mr Justice BRANDEIS, who delivered the opinion of the court in that case, in construing section 10 of the Federal Control Act of March 21, 1918, said:

"Thus, under section 10, if the cause of action arose prior to governmental control, suit might be instituted or continued to judgment against the company as though there had been no taking over by the government, save for the immunity of the physical property from levy and the power of the president to regulate suits in the public interest as by fixing the venue, or the time for trial. If the cause of action arose while the government was operating the system, the 'carrier while under federal control' was nevertheless to be liable and suable. This means, as a matter of law, that the government or its agency for operation could be sued, for under the existing law the legal person in control of the carrier was responsible for its acts. See *Gracie* v. *Palmer,* 8 Wheat., 605, 632, 633, 5 L. Ed., 696. The title by which suit should be brought—the person who should be named as defendant—was not designated in the act. In the absence of explicit direction, it was perhaps natural that those wishing to sue the carrier should have named the company as defendant when they sought to hold the government liable. It doubtless seemed, as suggested in *McNulta* v. *Lochridge,* 141 U. S., 327, 331, 332, 12 Sup. Ct., 11, 35 L. Ed., 796, that suit should be brought against the transportation company 'by name

"in the hands of" or "in the possession of" a receiver,' or director general. All doubt as to how suit should be brought was cleared away by General Order No. 50, which required that it be against the director general by name.

"As the Federal Control Act did not impose any liability upon the companies on any cause of action arising out of the operation of their systems of transportation by the government, the provision in Order No. 50, authorizing the substitution of the director general as defendant in suits then pending was within his power, the application of the Missouri Pacific Company that it be dismissed from this action should have been granted; and the judgment against it should therefore be reversed."

That case, involving as it did, the construction and effect to be given a federal statute and a general order (No. 50) made and promulgated by the director general of railroads, based on said statute, the holding of the supreme court of the United States will be accepted by this court as conclusive of the question presented in the instant case.

It results, therefore, that the judgment of the court of civil appeals will be reversed, and the judgment of the circuit court will be affirmed, with costs.